**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF ILLINOIS**
Urbana Division

| | |
|---|---|
| XINGJIAN SUN, XING ZHAO, and AO WANG,<br><br>       Plaintiffs,<br><br>v.<br><br>GARY GANG XU,<br><br>       Defendant. | Case No. 19-2242 |

**ORDER**

    This matter is before the Court on Plaintiffs' Motion to Dismiss (#25) Defendant Xu's four counterclaims pursuant to Fed. R. Civ. P. 12(b)(6). Defendant Xu filed a Response (#34) in opposition to the Motion to Dismiss. For the reasons explained below Plaintiffs' Motion to Dismiss is DENIED.

**I.**    **Background**

    **A.  Plaintiffs' Claims Against Xu**

    The three Plaintiffs are two former students and one professor at the University of Illinois. The three Plaintiffs are suing former University of Illinois Professor Gary Xu ("Xu"). The first Plaintiff, Xingjian Sun ("Sun"), a female student at the University, claims Xu raped her, forced her to get an abortion, beat her, and attempted to hit her with a car during their two-year relationship. The second Plaintiff, Xing Zhao ("Zhao"), a female student at the University of Illinois, claims Xu sexually harassed her and took credit for her work. (Plaintiffs' Complaint #1, p. 4). The third Plaintiff, Ao Wang ("Professor Wang"), is a professor at the University of Illinois. Professor Wang claims Xu tried to ruin

his career in retaliation for an online article Professor Wang wrote about Xu abusing female students.

### B. Plaintiffs' Public Comments About Xu

Plaintiffs made public comments about their allegations against Xu. The first Plaintiff, Sun, was interviewed by CBS Morning News, and a video of the interview was aired on CBS's television channel. Additionally, CBS published an article of Sun's interview on CBS News' website.[1] In this interview, Sun stated Xu raped her, beat her, and tried to kill her by running her over with his car.

The second plaintiff, Zhao, is *not* quoted in the Sixth Tone report that details the allegations against Xu.[2] In the Sixth Tone article, two females make anonymous allegations against Xu, alleging sexual abuse and sexual harassment. Xu alleges that Zhao was one of the anonymous sources for the Sixth Tone article. (Xu's Answer #21, p. 102-103). According to Xu, Zhao told Sixth Tone: (1) Xu harassed her; (2) Xu forced her into horrifying sexual behavior; (3) Xu threatened her; and (4) Xu attempted to kiss her but his attempt failed. (Xu's Answer #21, p. 102-103).

The third Plaintiff, Professor Wang, published a post on an online platform stating Xu sexually harassed students for 20 years. (Xu's Answer #21, p. 103). Additionally, Xu's Answer states Professor Wang accused him of sexual assault, sexual harassment, and beating women via internet posts from March 11, 2018, until March 19, 2018. (Xu's Answer #21, p. 103). Moreover, Xu's Answer alleges that Professor Wang posted written statements on a website called Weibo that stated Xu sexually assaulted and harassed women. (Xu's Answer #21, p. 104). Lastly, Xu alleged that Professor Wang stated in an online post that he was trained in Thai boxing and could "beat up" Xu. (Xu's Answer #21, p. 104).

---

[1] The Complaint in this case was filed on September 10, 2019. The interview was published by CBS on September 16, 2019.
[2] Sixth Tone is an online magazine that is owned by the Chinese Government. However, Sixth Tone's target audience is readers in the western hemisphere.

### C. Xu's Counterclaims

Xu denies Plaintiffs' allegations in his Answer, and Xu asserts four counterclaims against the three Plaintiffs. For Count 1, Xu alleges that Sun is liable for Intentional Infliction of Emotional Distress ("IIED") for the statements Sun made to CBS News. (Xu's Answer #21, p. 104). For Count 2, Xu alleges that Sun is liable for defamation for her false statements to CBS News. (Xu's Answer #21, p. 105). For Count 3, Xu alleges Plaintiff Zhao is liable for IIED for statements she made to the website, Sixth Tone. (Xu's Answer #21, p. 105). For Count 4, Xu alleges that Professor Wang is liable for IIED for making false statements about Xu on various websites. (Xu's Answer #21, p. 106). Plaintiffs argue that these four counterclaims should be dismissed for seven different reasons as described below.

## II. Legal Standard

### A. Federal Courts Sitting in Diversity Jurisdiction

As a general rule, federal courts sitting in diversity apply state substantive law and federal procedural law. *Doermer v. Callen*, 847 F.3d 522, 529 (7th Cir. 2017). Here, Illinois substantive law applies, and federal procedural law applies.

### B. Motion to Dismiss Standard

Plaintiffs argue Xu's four counterclaims should be dismissed under Fed. R. Civ. P. 12(b)(6). (Plaintiffs' Br. #26, p. 7). "The legal standard for a motion to dismiss a counterclaim is the same as the standard applied to a motion to dismiss a complaint" under Rule 12(b)(6). *Intercon Solutions, Inc. v. Basel Action Network,* 969 F. Supp. 2d 1026, 1067 (N.D. Ill. 2013); *see also Cozzi Iron & Metal, Inc. v. U.S. Office Equipment, Inc.*, 250 F.3d 570, 574 (7th Cir. 2001) ("We review a district court's decision to grant a motion to dismiss under Rule 12(b)(6) *de novo*, accepting all well-pleaded allegations in the counterclaim as true and drawing all reasonable inferences in favor of the [non-moving party].").

To survive a Motion to Dismiss, the Complaint must satisfy a two-part test. *See Garden City Employees' Retirement Systems v. Anixter Intern., Inc.*, 2012 WL 1068761 at *2 (N.D. Ill. Mar. 29, 2012). First, the Complaint must contain a "short and plain statement of the claim showing the pleader is entitled to relief[.]" *Bell Atlantic Corp. v. Twombly*, 550

U.S. 544, 545 (2007) (quoting Fed. R. Civ. P. 8(a)(2)); *see also Garden City Employees*, 2012 WL at *2. Relatedly, the Court must "accept all factual allegations in the complaint as true." *Tellabs Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (citations omitted).

Second, the allegations in the complaint "must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level'[.]" *E.E.O.C. v. Concentra Health Services, Inc.*, 496 F.3d 773, 776 (7th Cir. 2007); *see also Bravo v. Midland Credit Management, Inc.*, 812 F.3d 599 601-602 (7th Cir. 2016). "Asking for plausible grounds . . . does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of [illegality][.]" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007). In conclusion: "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all of the complaint's allegations are true[.]" *Id.*

### III. Analysis

#### A. The Fair Report Privilege

Sun argues Xu's defamation counterclaim should be dismissed because her interview with CBS News is protected under the Fair Report Privilege. To establish a defamation claim the moving party must present facts showing that "[(1)] the defendant made a defamatory statement about the plaintiff, [(2)] the defendant made an unprivileged publication of that statement to a third party, and [(3)] the publication caused damages." *Nalway v. Agnich*, 897 N.E.2d 902, 908 (Ill. App. 2008) (citations omitted). "A defamatory statement is not actionable if it is privileged[.]" *Solia Technology, LLC, v. Specialty Pub. Co.*, 852 N.E.2d 825, 842 (Ill. 2006).

The Court holds Sun cannot use the "Fair Report Privilege" because, in Illinois, a person cannot confer privilege upon herself. *Missner v. Clifford*, 914 N.E.2d 540, 551 (Ill. App. 2009). In *Missner*, an Illinois Appellate Court held that the Illinois Supreme Court endorsed Restatement (Second) of Torts § 611 Comment c ("Comment (c)"). *Missner*, 914 N.E.2d at 551. ("Therefore, we are bound to apply section 611, comment c, in accordance with supreme court precedent."). In reference to the Fair Report Privilege, Comment (c) states:

4

> The privilege stated in this Section is commonly exercised by newspapers, broadcasting stations and others who are in the business of reporting news to the public. It is not, however, limited to these publishers. It extends to any person who makes an oral, written or printed report to pass on the information that is available to the general public. . . . *A person cannot confer this privilege upon himself by making the original defamatory publication himself and then reporting to other people what he had stated.* This is true whether the original publication was privileged or not.

Restatement (Second) of Torts § 611 Comment (c) (emphasis added). Importantly, the word "publication" in this context is defined as: "Any act by which defamatory matter is communicated to someone other than the person defamed[.]" *Missner*, 914 N.E.2d at 552.

Here, Sun made statements to a CBS News reporter asserting sexual assault allegations against Xu.[3] After Sun gave the interview to CBS, CBS News made an oral and written report for the public. For this reason, under Comment (c), the reporter and CBS News are eligible to use the Fair Report Privilege, but Sun's statements are not privileged because Sun made the original allegedly defamatory statement, and Sun cannot confer the privilege upon herself.

The Court's interpretation is supported by an Illinois appellate court in *Pollock* and the Seventh Circuit in *Republic Tobacco*. In *Pollock*, Kurczaba and Pollock were two Chicago lawyers, and Pollock accused Kurczaba's parents of wrongdoing in a class-action complaint. *Kurczaba v. Pollock*, 742 N.E.2d 425, 430 (Ill. App. 2000). After Kurczaba started a new law firm, Pollock stapled a copy of the class-action complaint to an ad for the new law firm and sent those documents to prominent members of the Chicago community. *Id*. at 430. Kurczaba and his law firm sued Pollock for defamation, and the trial court granted Pollock's Motion to Dismiss on the grounds that Pollock's circulation of the complaint and ad was protected by the Fair Report Privilege. *Pollock,* 742 N.E.2d at 430, 432. The Illinois Appellate Court reversed and held "that the fair report on judicial

---

[3] As stated above, the Complaint in this case was filed on September 10, 2019. The interview was published by CBS on September 16, 2019. Both of these actions may constitute a "publication" under Comment (c) and Illinois law. *Missner*, 914 N.E.2d 540 at 552 ("Any act by which defamatory matter is communicated to someone other than the person defamed is a publication.").

5

proceedings privilege is not available to defendant[.]" *Pollock*, 742 N.E.2d at 442-43. The appeals court concluded that: "A person cannot confer privilege upon himself by making the original defamatory publication himself and then reporting to other people what he stated." *Id*. at 443.

In *Republic Tobacco Co.*, North Atlantic sent a letter to its customers on August 13, 1998, accusing Republic of violating antitrust laws and announcing a lawsuit against Republic for their illicit practices. *Republic Tobacco Co. v. North Atlantic Trading Co., Inc.*, 381 F.3d 717, 724 (7th Cir. 2004). North Atlantic argued that it could not be liable for defamation for this August 13th letter because it was entitled to use the Fair Report Privilege. *Id*. The Seventh Circuit affirmed the District Court's holding that North Atlantic could not "confer the privilege upon itself[.]" *Id*. at 731-32 ("[W]e are confident that if presented with the issue, the Illinois Supreme Court would determine that the privilege may not be self-conferred."). The Seventh Circuit also reasoned that its conclusion was "bolstered by a ruling from an Illinois appellate court holding that this privilege may not be self-conferred." *Id*. at 732 (citing *Kurczaba v. Pollock*, 742 N.E.2d 425, 443 (Ill. App. 2000)).

Sun argues Xu's IIED counterclaim against Sun should be dismissed because Xu relies on Sun's privileged statements to support his IIED counterclaim. As stated above, Sun's statements to CBS News were not privileged because she is not eligible to use the Fair Report Privilege in this instance. Therefore, the Court denies Sun's Motion to Dismiss Xu's IIED counterclaim on this basis.

### B. Zhao's Motion to Dismiss Xu's IIED Counterclaim Against Zhao for being too Speculative is Denied.

Zhao argues Xu's IIED counterclaim against Zhao should be dismissed because this counterclaim violates the Seventh Circuit's holding in *Sevugan* because it is too speculative. (Plaintiffs' Br. #26, p. 11-12); *Sevugan v. Direct Energy Servs., LLC,* 931 F.3d 610, 614 (7th Cir. 2019) ("[A] plaintiff who seeks to survive a motion to dismiss must plead

some facts that suggest a right to relief that is beyond the speculative level.").[4] Zhao reasons that Xu's counterclaim is too speculative because the Sixth Tone article does not name Zhao as a source, and Xu does not explain why he believes Zhao is an anonymous source for the article. (Plaintiffs' Br. #26, p. 11-12).

Plaintiffs misstate the legal standard for a Motion to Dismiss. When evaluating a Motion to Dismiss under Fed. R. Civ. P. 12(b)(6), the Court must "accept all factual allegations in the complaint as true." *Tellabs Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 309 (2007) (citations omitted). In *Twombly*, the United States Supreme Court stated: "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all of the complaint's allegations are true."[5] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Here, Xu's claim that Zhao made these anonymous allegations in the Sixth Tone article is a factual assertion that the Court must accept as true when evaluating the Motion to Dismiss. For this reason, the Court denies Zhao's Motion to dismiss on this ground.

### C. The Court Denies Plaintiffs' Four Arguments to Dismiss Xu's Three Counterclaims for Intentional Infliction of Emotional Distress.

Plaintiffs argue Xu's IIED counterclaims should be dismissed. To establish an IIED claim in Illinois, a plaintiff must establish:

> First, the conduct involved must be truly extreme and outrageous. Second, the actor must either intend that his conduct inflict severe emotional distress or know that there is at least a high probability that his conduct will cause severe emotional distress. Third, the conduct must in fact cause severe emotional distress.

*Schweihs v. Chase Home Finance*, LLC, 77 N.E.3d 50, 63 (Ill. 2016). Plaintiffs argue that Xu's IIED counterclaims should be dismissed for four reasons. First, Plaintiffs argue the alleged conduct does not qualify as "extreme and outrageous" under Illinois law.

---

[4] Xu's counterclaim against Zhao alleges that Zhao gave an interview to Sixth Tone where she accused Xu of sexual assault.
[5] "The legal standard for a motion to dismiss a counterclaim is the same as the standard applied to a motion to dismiss a complaint" under Rule 12(b)(6). *Intercon Solutions, Inc. v. Basel Action Network,* 969 F. Supp. 2d 1026, 1067 (N.D. Ill. 2013).

(Plaintiff Br. #26, p. 13). Second, Plaintiffs argue IIED claims cannot be based solely on defamatory statements. (Plaintiffs' Br. #26, p. 15). Third, Plaintiffs argue Xu relies on conclusory statements to support his assertion that Plaintiffs intended to cause him severe emotional distress. (Plaintiffs' Br. #26, p. 18). Fourth, Plaintiffs argue Xu has not properly pled that he suffered severe emotional distress. (Plaintiffs' Br. #26, p. 19). The Court holds Plaintiffs' four arguments fail.

### 1. Pleading Requirements - Extreme and Outrageous Conduct

Plaintiffs argued that Xu failed to plead facts that establish "extreme and outrageous conduct" for the IIED counterclaims because Xu did not plead facts that establish the three *Schweihs* factors. (Plaintiffs' Br. #26, p. 13-14) (citing *Schweihs v. Chase Home Finance*, *LLC*, 77 N.E.3d 50, 63 (Ill. 2016)). Plaintiffs' argument is not persuasive because the three *Schweihs* factors are merely advisory, and the Court must consider the facts and circumstances of each case when determining whether the conduct is extreme and outrageous. *Schweihs*, 77 N.E.3d at 63 ("Those [three] factors are to be considered in light of all of the facts and circumstances in a particular case, and the presence or absence of any of these factors is not necessarily critical to a cause of action for intentional infliction of emotional distress. The outrageousness of a defendant's conduct must be determined in view of all the facts and circumstances pled and proved in a particular case.")

Here, Xu has pled sufficient facts to establish the "extreme and outrageous" element for his three IIED counterclaims. Specifically, Xu alleged that Plaintiffs made false statements about him committing sexual assaults on students. At this stage of the litigation, the Court must accept these alleged facts as true. The Court denies Plaintiffs' Motion to Dismiss these claims because Xu sufficiently alleged conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of human decency." *Public Finance Corp. v. Davis*, 360 N.E.2d 765, 768 (Ill. 1976).

### 2. Defamatory Statements can Support the Extreme and Outrageous Element of an IIED Claim.

Plaintiffs argue that an IIED claim based solely on defamatory statements "generally cannot survive a motion to dismiss." (Plaintiffs' Br. #26, p. 15). However, district courts have repeatedly held that IIED claims can solely rely on defamatory statements.

In *Dawson*, the defendants blamed Dawson for a multi-million-dollar adverse judgment against the insurance company during a speech. *Dawson v. New York Life Ins. Co.*, 932 F. Supp. 1509, 1546 (N.D. Ill. 1996). The defendants' speech was published to more than 700 co-workers, and the defendants alleged Dawson engaged in and encouraged "forgery and policyholder fraud." *Id*. at 1546. The Court found "a jury could reasonably find defendants' conduct to be so extreme and outrageous as to support liability for intentional infliction of emotional distress[.]" *Id*. at 1546. The Court denied the defendants' Motion for Summary Judgment for the IIED claim and held that this claim could proceed to trial. *Id*. at 1546. Importantly, Dawson's IIED claim was solely based on the defendants' allegedly false and defamatory statements. *Id*. at 1545.

In *Goldstein*, the plaintiffs argued that the defendants failed to state a counterclaim for IIED because their allegations of defamation were not "sufficiently extreme or outrageous."[6] *Goldstein v. Kinney Shoe Corp.*, 931 F. Supp. 595, 599 (N.D. Ill. 1996). The Court disagreed, and the Court held that the claims were extreme and outrageous because the claims charged the defendants with "criminal sexual conduct." *Goldstein*, 931 F. Supp. at 599. The Court concluded that the IIED counterclaim would *not* be dismissed. *Id*. at 599.

Here, Xu alleges that the three Plaintiffs lied about Xu engaging in criminal and illicit sexual conduct. The Court must accept the facts that Xu alleged as true when evaluating this Motion to Dismiss. The Court concludes Xu's allegations, that Plaintiffs

---

[6] It appears that the alleged defamatory statements were the sole basis for the IIED claim. *Goldstein*, 931 F. Supp. at 599. ("The plaintiffs argue that the defendants have failed to state a claim for intentional infliction of emotional distress on the basis that the alleged defamation was not sufficiently extreme and outrageous.").

made false statements about him engaging in criminal and illicit sexual conduct, are sufficient to allege extreme and outrageous conduct. Therefore, Xu's three IIED counterclaims shall remain.

### 3. A Person that Makes a False Sexual Abuse Claim Knows there is a High Probability that their Conduct will Create Severe Emotional Distress.

Plaintiffs argue Xu's IIED counterclaims must be dismissed because Xu did not plead facts that establish Sun, Zhao, and Professor Wang "intended to inflict severe emotional distress or that there existed a high probability that their conduct would cause severe emotional distress[.]"[7] (Plaintiffs' Br. #26, p. 18). Here, Xu alleged that the three Plaintiffs made false allegations that he sexually assaulted his students while he was a professor.

The Court must accept Xu's (i.e. the non-moving party) allegations as true when reviewing a Motion to Dismiss. The Court holds that a reasonable person would know there is a high probability that false allegations of sexual assault would cause the accused individual severe emotional distress. For this reason, Plaintiffs' argument is denied.

### 4. Xu Adequately Plead that Plaintiffs' Comments Caused him Severe Emotional Distress.

Plaintiffs argued Xu's IIED claims are deficient because he did not adequately allege that Plaintiffs' conduct caused severe emotional distress. (Plaintiffs' Br. #26, p. 19). Additionally, Plaintiffs argued that Xu falsely asserted that Plaintiffs' comments caused Xu's heart condition. Specifically, Plaintiffs argued Xu stated he had a heart condition in

---

[7] Plaintiffs alleged that their argument that Xu failed to plead sufficient facts to support the "intent element" is supported by *Brackett*. (Plaintiffs' Br. #26, p. 18). However, in *Brackett* the Plaintiff was fired from her position as a CEO without an explanation and for an unspecified reason. *Brackett v. Galesburg Clinic Ass'n*, 689 N.E.2d 406, 409 (Ill. App. 1997). Based on these facts, the court concluded: "Moreover, we find that plaintiff has failed to allege facts supporting her conclusory allegation that defendants intended to inflict severe emotional distress or that there existed a high probability that their conduct would cause severe emotional distress." *Brackett*, 689 N.E.2d at 409. Here, Xu adequately plead that the Plaintiffs knew the allegations would cause him severe emotional distress because he plead that they made false allegations against him for sexual assault. In modern society, accusations of sexual misconduct are taken very seriously. The Court holds that the facts of this case are dissimilar to *Brackett*, where the CEO was fired for an unspecified reason.

2014, which was before Plaintiffs made their allegations against him in 2018 and 2019. (Plaintiffs' Br. #26, p. 20); (Xu's Answer #21, p. 28).

Here, Xu asserted that the false allegations by the three Plaintiffs caused him to suffer a heart ailment. (Xu's Answer #21, p. 104). The Court agrees that Xu's claims regarding his heart condition could be construed as inconsistent. However, at this stage of the litigation, the Court must accept Xu's assertions as true, even if that amounts to construing the allegation as an exacerbation of his pre-existing heart condition. The Court holds Xu sufficiently plead that he suffered severe emotional distress from Plaintiffs' conduct.

## IV. Conclusion

For the reasons stated above, Plaintiffs' Motion to Dismiss (#25) Xu's four counterclaims is DENIED.

ENTERED this <u>6th</u> day of May, 2020.

s/ ERIC I. LONG
UNITED STATES MAGISTRATE JUDGE