E-FILED
Wednesday, 01 June, 2022  11:19:21 PM
Clerk, U.S. District Court, ILCD

## UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## URBANA DIVISION

| | | |
|---|---|---|
| XINGJIAN SUN, | ) | |
| XING ZHAO, and | ) | Case No.:  2:19-cv-2242 |
| AO WANG, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| GARY GANG XU, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

### PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiffs Xingjian Sun, Xing Zhao, and Ao Wang, by and through counsel, moves for

summary judgment as to the following counts of Defendant's counter-claim pursuant to Fed. R.

Civ. P. 56 and Local R. 7.1(D) and an order granting Plaintiffs' motion:

    Count I – Sun – Intentional Infliction of Emotional Distress
    Count III – Zhao – Intentional Infliction of Emotional Distress
    Count IV – Wang – Intentional Infliction of Emotional Distress

In support of this Motion, Plaintiffs submit the accompanying Memorandum and exhibits.


Dated:  June 1, 2022


/s/ *Jessica Wegg*
Jessica Wegg, ARDC #6301876
Jonathan Little ARDC # 6314350
Annemarie Alonso
Saeed & Little, LLP
133 West Market Street, No. 189
Indianapolis, Indiana 46204
Telephone: (317) 721-9214
jessica@sllawfirm.com
jon@sllawfirm.com
annie@sllawfirm.com

Dr. Ann Olivarius
Dr. J. F.O. McAllister
Lee D. Trevis
McALLISTER OLIVARIUS
641 Lexington Avenue, 13th Floor
New York, New York 10022
Telephone: (212) 433-3456
aolivarius@mcolaw.com
jmcallister@mcolaw.com
ltrevis@mcolaw.com

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I, Jessica Wegg, do hereby state on oath that I electronically filed the foregoing with the

Clerk of the Court using the CM/ECF system which will send notification of such filing to all

parties who have appeared and are registered as CM/ECF participants in this matter.


*/s/ Jessica Wegg*
Jessica Wegg

**UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF ILLINOIS**
**URBANA DIVISION**

| | | |
|---|---|---|
| XINGJIAN SUN, | ) | |
| XING ZHAO, and | ) | Case No.: 2:19-cv-2242 |
| AO WANG, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| GARY GANG XU, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## PLAINTIFFS' MEMORANDUM IN SUPPORT OF

## MOTION FOR PARTIAL SUMMARY JUDGMENT

### INTRODUCTION

Plaintiffs Xingjian Sun, Xing Zhao and Ao Wang (hereinafter, the "Plaintiffs") have filed a ten-count complaint against Defendant and Counter-claimant Gary Gang Xu (hereinafter, "Xu"), alleging that Xu sexually trafficked Sun, compelled Sun and Zhao to perform forced labor, trafficked them into servitude, committed offenses under the Illinois Gender Violence Act against them, subjected them to involuntary servitude, engaged in trafficking in persons against them, and committed intentional and negligent infliction of emotional distress against Wang.

In response, Xu asserted counter-claims against each Plaintiff for intentional infliction of emotional distress and against Sun for defamation. Because the undisputed facts establish that Xu cannot establish one or more elements of each of his counterclaims, Plaintiffs should be granted summary judgment on each count.

1

## STATEMENT OF UNDISPUTED MATERIAL FACTS

1.      In 2014, Xu developed a heart condition that required an invasive medical procedure.  (Exh. A, Deposition of Gary Gang Xu at 177-78, 312.)

2.      From March 10, 2018, through March 19, 2018, Wang posted on Chinese social media platforms Douban and Zhihu that he had learned that Xu had sexually and physically assaulted female colleagues and students for more than two decades.  (Exh. B, Deposition of Ao Wang at 14-15, 73-76; Exh. C, Zhihu.com messages by Ao Wang.)

3.      On April 24, 2018, Xu sued Wang in the Luohu District People's Court, Shenzhen, Guangdong, China for damage to his reputation and psychological injuries.  (Exh. D, Xu v. Wang, Luohu Dist. People's Ct. Jgmt., Oct. 23, 2019, at 1.)  On October 23, 2019, the People's Court concluded that Wang's social media posts violated Xu's rights of reputation in China and were therefore defamatory.  The Court ordered Wang to refrain from posting defamatory material about Xu, delete his existing posts, and pay him damages.  (*Id.* at 4.)

4.      On July 20, 2021, the Shenzhen Intermediate People's Court ordered the lower court's judgment withdrawn and returned the case for retrial.  (Exh. E, Xu v. Wang, Luohu Dist. People's Ct. Jgmt., May 13, 2022, at 1.)

5.      After retrial, the People's Court rejected all claims Xu asserted against Wang on May 13, 2022, entering a civil judgment for Wang.  The People's Court ruled that (1) there is no evidence of a "personal grudge" between Wang and Xu; (2) Wang's March 2018 posts did not directly accuse Xu of sexual misconduct, but rather "to show that there were victims alleging that" Xu had abused and assaulted them and hoped that any other potential victims would be vigilant; and (3) that Wang's posts were "of public interest."  (*Id.* at 9.)

6.      On March 21, 2018, *Sixth Tone*, an English-language online publication discussing current affairs in China, published an article reporting Xu's resignation from the University of Illinois Urbana-Champaign ("UIUC" or "the University").  The author spoke

2

with two anonymous women who reported being harassed, threatened, and physically and psychologically abused by Xu while students at the University.  (Exh. F, *Sixth Tone* interview dated March 21, 2018 at 1.)

7.  Zhao is one of the anonymous women who spoke with *Sixth Tone*.  (Exh. G Deposition of Xing Zhao at 254.)

8.  In the *Sixth Tone* article, an anonymous woman accused Xu of harassment, "unwanted sexual behavior," and causing her physical and physiological damage.  (Exh. F at 3.)

9.  Zhao did not make those statements to *Sixth Tone*.  (Exh. G at 254-57.)

10.  On September 16, 2018, *CBS This Morning* aired a recorded interview of Sun, in which she reported that Xu tried to kill her with his car and subjected her to physical, emotional, and sexual abuse.  (Exh. H, Deposition of Xianjang Sun at 195-98).  An article substantially repeating the recorded broadcast was simultaneously published online.  (Exh. I, Former University of Illinois professor accused of sexual and physical abuse:  "He tried to kill me," Sept. 16, 2019.)   The broadcast video and written transcript are available at: https://www.cbsnews.com/news/gary-xu-former-university-of-illinois-professor-accused-of-sexual-abuse/.

11.  Since 2010, Xu has sought and received medical treatment from Dr. Andrea Brasch, Dr. Scott Cinnamon, and Dr. Sami Zabanah.  (Exh. J, Xu's Answers to Interrogatories).

12.  Since June 2014, which was years before any public statements by Plaintiffs criticizing Xu's behavior, Xu has not undergone any invasive medical procedure related to his heart condition.

13.  Since March 10, 2018, Xu has not received medical treatment for complaints of symptoms related to any emotional, mental, or psychological condition.

14.     On September 10, 2019, five years after Xu's invasive heart procedure, Plaintiffs filed their complaint in the above-captioned matter.  (*See* ECF No. 1.)

15.     On or about February 7, 2020, Xu reported suffering damages for severe emotional distress, including "loss of reputation and the effect of Mr. Xu's professional standing in the art community, lost business and job opportunities and medical bills."  (Exh. K, Xu's Initial Disclosures ¶ iii.)

16.     On or about March 15, 2021, Xu testified under oath that his alleged injuries giving rise to his counterclaims consist of anxiety attacks accompanied by nightmares and sleep problems, lost income, and loss of reputation and good name.  (Exh. A at 328-29.)

## ARGUMENT

### I.     STANDARD FOR SUMMARY JUDGMENT

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A genuine issue of material fact exists for trial when, in viewing the record and all reasonable inferences drawn from it in a light most favorable to the non-moving party, a reasonable jury could return a verdict for the non-movant.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).  The movant has the burden of establishing that there is no genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986).  If the movant satisfies this burden, the non-movant must set forth specific facts which demonstrate the existence of a genuine issue of material fact.  Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324, 106 S. Ct. at 2553.  Rule 56(c) mandates the entry of summary judgment against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and

in which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322, 106 S. Ct. 2552-53; *Waldridge v. American Hoescht Corp.*, 24 F.3d 918, 920 (7th Cir. 1994).  A scintilla of evidence in support of the non-moving party's position is not sufficient to successfully oppose a summary judgment motion; "there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 250, 106 S. Ct. at 2511.

In deciding the present motion for summary judgment, the court does not decide between two competing versions of facts.  Rather, the issue is whether, taking the facts in the light most favorable to Xu, he has a remedy under Illinois law for intentional infliction of emotional distress.  *See Lopacich v. Falk*, 5 F.3d 210, 210-11 (7th Cir. 1993) (dismissing case because "even if the facts asserted . . . actually occurred, she has no remedy").

## II.  EACH OF XU'S COUNTER-CLAIMS FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS SHOULD BE DISMISSED BECAUSE NONE OF THE PLAINTIFFS' CONDUCT WAS EXTREME AND OUTRAGEOUS

A claim for intentional infliction of emotional distress requires proof of three elements. First, Xu must show that each individual Plaintiff engaged in "truly extreme and outrageous" conduct toward him.  Second, he must show that the Plaintiff either intended or recklessly disregarded the probability that the conduct would cause him to suffer emotional distress. Finally, Xu must produce evidence to show that the Plaintiff's conduct actually and proximately caused him severe emotional distress.  *Pub. Fin. Corp. v. Davis*, 360 N.E.2d 765, 767 (Ill. 1976); *McGrath v. Fahey*, 533 N.E.2d 806, 809 (Ill. 1988).  As shown below, Xu's counter-claims should be dismissed because none of the Plaintiffs' conduct was extreme and outrageous as a matter of law.

With respect to the first element, "liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or trivialities." *Public Fin. Corp. v. Davis*,

360 N.E.2d 765, 767 (1976).  Nor can a defendant be held liable just for acting "with an intent which is tortious or even criminal, or that [she] had intended to inflict emotional distress, or even that [her] conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort."  *Id.*; *see also Benton v. Little League Baseball, Inc.*, 181 N.E.3d 902, 929 (Ill. App. Ct. 1st Dist. 2020) ("Conduct may be discriminatory, blameworthy, highly inappropriate, and reprehensible, but that does not make it actionable as intentional infliction of emotional distress.").  Rather, for the tort of intentional infliction of emotional distress, the conduct in question must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency."  *Id.* (quoting Restatement (Second) of Torts § 46, cmt. d (1965) (internal quotations omitted)).  Whether conduct is extreme and outrageous is a question of law.  *Ulm v. Memorial Med. Ctr.*, 964 N.E.2d 632, 641 (Ill. Ct. App. 4th Dist. 2012).

In determining whether conduct is extreme and outrageous, a court must view the conduct objectively.  *Harriston v. Chicago Tribune Co.*, 992 F.2d 697, 703 (7th Cir. 1993).  "The tort of intentional infliction of emotional distress does not exist in a vacuum and must be viewed in its pertinent context."  *Carr v. Village of Richmond*, No. 96 C 50203, 1996 U.S. Dist. LEXIS 17069, at *24 (N.D. Ill. Nov. 15, 1996).

When evaluating whether conduct is extreme and outrageous, the Illinois Supreme Court has described several non-exhaustive factors that can inform the analysis.  First, "the degree of power or authority which a defendant has over a plaintiff can impact . . . whether that defendant's conduct is outrageous," and "the more control which a defendant has over the plaintiff, the more likely that defendant's conduct will be deemed outrageous, particularly when the alleged conduct involves either a veiled or explicit threat to exercise such authority or power to plaintiff's detriment."  *McGrath*, 533 N.E.2d at 809-10.  Next, the court may consider whether the defendant reasonably believed her objective was legitimate.  *Id.* at 810.

A defendant pursuing a legitimate objective is entitled to "substantial latitude" in her actions. *Id.*  Finally, the court can consider a defendant's knowledge of a plaintiff's peculiar susceptibility to emotional distress.  "Behavior which (though rude, abrasive or extremely inconsiderate) may not otherwise be actionable may be deemed outrageous if the defendant knows that the plaintiff is peculiarly susceptible to emotional distress." *Id.*

After considering these factors and the totality of the circumstances, the court should grant the Plaintiffs' motion for summary judgment unless a recitation of the facts to average members of the community arouses their resentment against the Plaintiff and leads them to exclaim, "Outrageous!"  Restatement (Second) of Torts § 46 cmt. d (1965).  This is a "high burden" that Xu cannot meet.  *Benton v. Little League Baseball, Inc.*, 181 N.E.3d at 929.

A.   *Sun's Conduct Was Not Extreme and Outrageous*.

In Count I of his counter-claim, Xu alleges that "Sun engaged in extreme and outrageous conduct toward Xu with her statements during the CBS Morning News."  (ECF No. 21, Count 1 ¶ 2).[1]  In support, Xu asserts only that during a September 16, 2018, recorded interview with *CBS Morning News*, Sun stated that "Xu beat her and raped her countless times and that Xu tried to kill her by running her down with his car."  (ECF No. 21 ¶ 7.)  Xu further alleges that the headline to the printed article read, "He tried to kill me."  (*Id.*)

On May 6, 2020, this Court denied Sun's motion to dismiss Xu's counter-claim, reasoning in part that Xu had alleged that she "made false statements about him committing sexual assault against students," which this Court was constrained to accept as true at that stage of the proceeding.  (ECF No. 35 at 8.)  Given the stage of the proceedings, the Order gives no indication that the Court read the actual statements publicized by the *CBS Morning News* nor

---

[1] Although not alleged in Count I, Xu's counter-claim also references a text message sent by Sun in 2014.  (ECF No. 21 ¶ 8.)  To the extent that Xu relies on this message to support his counter-claim, the claim is untimely and must be dismissed as a matter of law.  *See* 735 ILCS 5/13-202 (two-year statute of limitations for personal injury claims).

considered the context within which they were given.  (*See generally id.*)  Here, in the context of a motion for summary judgment, such an examination must be undertaken so that each statement Sun made about Xu can be properly viewed within the totality of the circumstances. When doing so, it is clear that the statements made by Sun to the *CBS Morning News* were not so extreme and outrageous so as to be actionable for intentional infliction of emotional distress.

The recorded interview and printed article are short.  In print, the article spans just over a page.  (*See* Exh. I.)  The broadcast lasts 3 minutes, 19 seconds, including journalist commentary not attributable to Sun.[2]  The article and the broadcast interview quote Sun only six times:

1. "He tried to kill me"

2. "I didn't seriously date anyone before him.  I didn't know what was love."

3. "It's too much, I don't remember.  It's too traumatizing. but I would say none of the sex, especially after the fight, was consensual."

4. "He was after me, and he went to the parking lot and started his car driving after me trying to crash me in the street.  I was so scared, and I was actually surprised that someone actually just try to kill me in public."

5. "I believe eventually three times.  I felt like they wanted to sweep it under the rug, that's for sure."

6. "Sometimes, yes.  And I'm gonna live this the whole life."

(*See* Exh. I.)

Of these six statements, the second and fifth are clearly not extreme and outrageous. No average person in the community, and certainly no reasonable juror, would be aroused to resentment against Sun for making these subjective, personal statements.  The first, fourth, and sixth statements all relate to a single incident, and the third stands alone.  None is extreme or outrageous, individually or collectively.

---

[2] https://www.cbsnews.com/news/gary-xu-former-university-of-illinois-professor-accused-of-sexual-abuse/.

1.      *"It's too much, I don't remember.  It's too traumatizing. but I would say none of the sex, especially after the fight, was consensual."*

During the interview, CBS correspondent Meg Oliver asked Sun, "How many times did he rape you?"  (Exh. I.)  Sun responded, "It's too much, I don't remember.  It's too traumatizing.  but I would say none of the sex, especially after the fight, was consensual."  (*Id.*)  This is the totality of the statements Sun made about sexual abuse on the *CBS Morning News*.  She did not accuse Xu of abusing other students nor did she offer any details of the frequency or severity of the abuse she suffered.  (*See* ECF No. 35 at 8.)  Sun answered a question with a direct, measured response about her experiences with Xu.

While the suggestion that Sun felt traumatized from her experiences with Xu, that she and Xu fought, and that she did not consider the sex she had with Xu to be consensual may be understandably concerning to Xu, limited revelations of sexual abuse are not (and should not be) categorically extreme and outrageous.  Rather, they must be viewed in the context in which they were made.

For instance, the Second District has held that limited accusations by a mother that her three-year-old son was raped by his father was not extreme and outrageous under the circumstances.  *See Hoffman v. Hoffman*, 2011 IL App (2d) 101005-U.

> Although accusing someone of child sexual abuse, in some contexts, could be considered extreme and outrageous conduct, we are not convinced that it was outrageous in the present context.  Defendant had a legitimate objective to protect her children when she reported suspected abuse to the appropriate authorities.  Moreover, during the time leading up to the parties' filing for dissolution of marriage and the pendency of those proceedings, it was not outrageous to discuss the suspected abuse with family members, a teacher, or church members.  Given the context, defendant's limited statements that Christopher and Raymond sexually abused the two minors were not outrageous, and therefore, cannot support a claim for intentional infliction of emotional distress.

*Id.* ¶ 18.  If accusations of child rape by his father can be excused under certain circumstances, certainly Sun's vague statements about Xu to the *CBS Morning News* deserve the same treatment.

9

Indeed, the idea that a public statement that someone has raped another person is automatically extreme and outrageous cannot make sense. In reality, rape is so widespread as to be commonplace. Every 68 seconds an American is sexually assaulted; one out of every six American women has been the victim of an attempted or completed rape in her lifetime. https://www.rainn.org/statistics/scope-problem. Shame and fear of reprisal have kept women silent in the face of this crime for millennia, but as the MeToo movement has recently shown, that approach leads to further abuse. Sunlight is a powerful disinfectant, both to deter further abuse, and to let the millions of rape victims realize they are not alone. Shaming victims into silence -- including by holding them legally liable for causing extreme harm simply by stating their own experience -- is a tool that helps perpetrators continue their deviant ways. It must be against public policy to conclude that every (perhaps even *any*) discussion of rape by a victim is *ipso facto* intentional infliction of emotional distress on the alleged rapist. Certainly under the facts presented here, no claim of intentional infliction of emotional distress can be made out.

### 2.  *"He tried to kill me" and related statements*

The remaining three statements made to the *CBS Morning News* relate to an incident that occurred on August 4, 2015. On that day, Sun and Xu were together at Sun's apartment at 135 W. Clark Street in Champaign. (Exh. A at 246-49; Exhibit L, Champaign Police Dept. Report, Aug. 4, 2015, at 3; Exh. M, Champaign Police Dept. Supp. Report, Aug. 4, 2015, at 2.) Sun took Xu's cell phone and would not return it. (Exh. A at 247-48; Exh. H at 143-44; Exh. M at 1-2.) An argument ensued, and Sun fled the apartment. (Exh. A at 247-48; Exh. L at 1; Exh. M at 2.) Sun ran on foot down the street toward the Champaign Public Library. (Exh. A at 247-48; Exh. H at 144; Exh. L at 2; Exh. M at 1.) Xu followed immediately behind her in his vehicle. (Exh. L at 2.)

10

While details of this incident are rife with factual disputes, these basic material facts are undisputed in the record. The statements made to the *CBS Morning News* are nothing more than Sun's memories that she felt scared, surprised, and threatened when Xu followed her down the street as she fled to the Champaign Public Library. Xu may deny any intent to injure or harm Sun that day, but Xu's intent is immaterial to whether, by sharing how she perceived the incident with the *CBS Morning News*, Sun's words were so extreme and outrageous as to fall beyond the bounds of decency. No reasonable person can find Sun's expression of her state of mind on August 4, 2015, to be truly extreme and outrageous. Xu's counterclaim must be dismissed as a matter of law.

B.   *Zhao's Conduct Was Not Extreme and Outrageous.*

Xu's counter-claim against Zhao alleges that she "engaged in extreme and outrageous conduct toward Xu with the statements she made during the interview." (ECF No. 21, Count III, ¶ 2.) While Xu's claim does not specify an interview, his counter-claim identifies an interview with *Sixth Tone* that was published on March 21, 2018. (*Id.* at ¶ 9.)

For the *Sixth Tone* article, "two women spoke . . . about sexual misconduct they say they experienced at the hands of Xu. Out of concern for their privacy, both women declined to use their names." (Exh. F at 3.) Zhao was one of those women, but the undisputed material facts show that she did not make any statements published in the interview. (Exh. G at 255-57.)

Although neither woman was publicly identified in the article, Xu attributes to Zhao the following statements:

1. "Over the year after she met the professor, he harassed her for the first time, catching her completely off guard. 'I hadn't thought to be vigilant around him.'" (ECF No. 21 ¶ 9.)

2. "After the first instance, the woman said, Xu forced her into unwanted sexual behavior that she described as 'horrifying,' alternately using affectionate words and menacing

threats to coerce her into obeying.  For fear of being recognized, she did not specify when this occurred."  (*Id.* ¶ 10.)

3. "My life was ruined during that period."  "My self-esteem was really low – I felt physically dirty."  "She said she suffered both physical and psychological damage, and added that she was aware of other UIUC students who had had sexual relationships with Xu, including an undergraduate who reported him to the school in 2015."  (*Id.* ¶ 11.)

4. Xu only "attempted to kiss her" but his attempt fell short.  (*Id.* ¶ 12.)

Zhao testified under oath that she is not the source of any of the first three statements. (Exh. G at 256-57.)  Those statements were made by an anonymous woman who goes by the online name of "Survivor 2018."  (*Id.*)  Xu has not produced (and cannot produce) any evidence to dispute this fact.  His assertion that Zhao is the source of these statements is unsupported speculation and should be disregarded entirely.

Zhao admitted at her deposition to publicly stating that Xu "attempted to kiss her" and that she believed Xu had committed tax evasion.  (*Id.* at 257-59.)  Neither Xu's attempt to kiss Zhao nor her accusation of tax evasion, however, were ever mentioned in the *Sixth Tone* article. (*See generally* Exh. F (making no mention of a failed kiss or tax evasion); ECF No. 21 at ¶¶ 12-13.)  This alone is grounds for summary judgment because Xu has alleged only that "Zhao engaged in extreme and outrageous conduct toward Xu *with the statements she made during the interview*."  (ECF No. 21, Count III, ¶ 2 (emphasis added).)   Because the undisputed material facts show that the interview quoted no statements by Zhao, she cannot have engaged in any extreme and outrageous conduct toward Xu thereby.  Summary judgment should be granted.

Even if the three statements in the *Sixth Tone* article were attributable to Zhao, Xu's counter-claim fails.  In the May 6, 2020, Order, the Court denied Zhao's motion to dismiss Xu's counter-claim against her because, again, Xu "alleged that Plaintiffs made false statements about him committing sexual assaults on students."  (ECF No. 35 at 8.)  Such

statements were properly retained at the motion to dismiss stage, but at the summary judgment stage, it is clear they are not extreme and outrageous and must be dismissed.

Accepting the facts in a light most favorable to Xu, no reasonable juror can find that the statements above, made in the context of an investigative article involving many sources, are "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency."  Restatement (Second) of Torts § 46, cmt. d (1965).  As with Sun, the remaining three statements recount a woman's personal feelings that a man harassed her, subjected her to unwanted sexual behavior, and caused her lifetime physical and psychological trauma.  Her statements, which did not contain graphic detail, were similar to and corroborated by statements made by other anonymous sources.  Also like Sun, the statements are limited to Xu's mistreatment of her, not of any other female students at the University.

Moreover, Xu has *not* alleged that the statements Zhao allegedly made were false, as the Court incorrectly reasoned in its May 6 Order.  (ECF No. 35 at 8 ("Xu alleged Plaintiffs made false statements about him committing sexual assaults on students.")  Xu has claimed that Sun's statements were "false and defamatory," but he makes no such claims against Zhao.  (*Compare* ECF No. 21, Count II (alleging Sun's statements are "false and defamatory") *with* ECF No. 21, Count III (containing no such allegation against Zhao).)

Viewed in a light most favorable to Xu, the content and context of the statements Xu (wrongfully) attributes to Zhao in the *Sixth Tone* article are not extreme and outrageous as a matter of law.  Xu's counter-claim should be dismissed.

C.     *Wang's Conduct Was Not Extreme and Outrageous*.

Finally, Xu's counter-claim against Wang centers on a series of posts Wang made on Chinese social media sites from March 10, 2018, to March 19, 2018.  (ECF No. 21 ¶¶ 14-20.)

On March 10, 2018, Wang, himself a university professor, first posted on douban.com a letter raising concerns about information he had learned about a university professor who had sexually assaulted his students for nearly twenty years.  (*See* Exh. C at 1.)  Wang conspicuously prefaced his post with the following statement of purpose:

> **Based on some friends' discussions, I've decided to straightforwardly disclose my experiences as a warning, so that the students who are not aware will not become the next victims**.

(*Id.*)

On March 12, 2018, Wang reposted his earlier message on Chinese website zhihu.com, this time publicly identifying Xu as the abusive professor and asking the public's help in gathering evidence of Xu's actions so that he can "[g]ive a warning to prevent people from becoming next victims and exclude the misbehaving persons like Gary Gang Xu from the education sector."  (*Id.* at 3.)  Wang worried that Xu might seek to relocate to a university in China after his dismissal from UIUC and "students who are not aware of his misdeeds may become victims."  (*Id.* at 2.)  In response, many victims of sexual violence—some by Xu; others not—wrote to corroborate Wang's information and share their experiences.  (*See generally id.*)

In response, Xu brought a defamation action against Wang in the Luohu District People's Court in Shenzen, Guangdong, China.  (Exh. D.)  On October 23, 2019, the People's Court concluded that Wang's social media posts violated Xu's rights of reputation in China and were therefore defamatory.  The Court ordered Wang to refrain from posting defamatory material about Xu, delete his existing posts, and pay him damages.  (*Id.* at 4.)

On July 20, 2021, however, the Shenzhen Intermediate People's Court ordered the lower court's judgment withdrawn and returned the case for retrial.  After retrial, the People's Court rejected all claims Xu asserted against Wang on May 22, 2022, entering a civil judgment for Wang.  The People's Court ruled that (1) there is no evidence of a "personal grudge"

14

between Wang and Xu; (2) Wang's March 2018 posts did not directly accuse Xu of sexual misconduct, but rather "reflected there are victims who accused" Xu of sexual misconduct and hoped that any other potential victims would be vigilant; and (3) that Wang's posts were lawfully made "out of public interest."  (Exh. E at 9.)[3]

Considering their undisputed manner, purpose, place, and circumstances, Wang's March 2018 statements about Xu cannot be considered extreme and outrageous as a matter of law.  When evaluating Wang's conduct, it is critical to consider "whether [he] reasonably believed that his objective was legitimate." *McGrath v. Fahey*, 533 N.E.2d 806, 810 (Ill. 1988). Where a defendant acts with a reasonable belief that his objectives are appropriate, he should be given "substantial latitude" in carrying out those objectives without risk of liability for intentional infliction of emotional distress. *Id.*

Wang's objectives are manifest from the text of his posts—to raise awareness and to warn students in China that Xu had reportedly sexually abused students in the United States. (Exh. C at 1-3.)  He did so not out of personal animosity or self-interest, but out of genuine concern for female students who might unwittingly find themselves in Xu's Chinese classrooms in the future.  (*See id.* at 2 (inviting Xu to talk "[i]f we meet someday"); Exh. B at 70-71; Exh. E at 9 (Wang's statements were made in the public interest, not because of a "personal grudge").)  As a fellow academic and Chinese citizen, these objectives were both reasonable and legitimate.

Indeed, the Chinese court has ended this debate.  "The reasonableness of a defendant's belief that his objective . . . is legitimate may occasionally depend upon an interpretation and application of a rule of law." *McGrath v. Fahey*, 533 N.E.2d at 811.  This is precisely what the People's Court did.  In exonerating Ao from violating Chinese law, the court concluded

---

[3] This ruling also forecloses any question of material fact concerning Wang's intent to cause Xu emotional distress by his social media posts.  Xu cannot present evidence to support this element of his claim.

15

that Wang's statements were not made out of personal animosity, but rather "out of public interest" in hopes that "potential victim(s) would defend their rights together."  (Exh. E at 9.)

The content of Ao's messages cannot be considered extreme and outrageous under any circumstances.  They merely disclose publicly information he had been told privately about Xu's twenty-year record of sexual misconduct.  He made no accusations of his own, leaving the information he had learned to speak for itself as a warning to others.  If the legitimacy of his objective could be doubted, the Luohu District People's Court ended the discussion on May 22, 2022.  Wang's undisputable concern for the well-being and safety of female students who might encounter Xu in a Chinese classroom is far from beyond the bounds of decency.  It is reasonable, admirable, and should be expected in a civilized society.

## III.   EACH OF XU'S COUNTER-CLAIMS FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS SHOULD BE DISMISSED BECAUSE NONE OF THE PLAINTIFFS' CONDUCT CAUSED XU TO SUFFER SEVERE EMOTIONAL DISTRESS

Even if the Plaintiffs' conduct was extreme and outrageous, Xu's three counter-claims for intentional infliction of emotional distress should be dismissed because the undisputed facts show that Plaintiffs' conduct did not cause Xu to suffer severe emotional distress as a matter of law.

In Illinois, the law offers no recovery for trivial emotional harms.  "The law intervenes only where the distress inflicted is so severe that no reasonable man could be expected to endure it.  The intensity and duration of the distress are factors to be considered in determining its severity." *McGrath v. Fahey*, 533 N.E.2d 806, 809 (Ill. 1988) (quoting Restatement (Second) of Torts § 46, cmt. j).  "Although fright, horror, grief, shame, humiliation, worry, etc. may fall within the ambit of the term 'emotional distress,' these mental conditions alone are not actionable." *Pub. Fin. Corp. v. Davis*, 360 N.E.2d 765, 767 (Ill. 1976).  Nor are anxiety, sleeplessness, reoccurring nightmares, loss of appetite, social withdrawal, or fear of

16

reputational harm enough to state a claim. *See Khan v. American Airlines*, 639 N.E.2d 210, 215 (Ill. App. Ct. 1994) (finding sleep problems, reluctance to discuss troubling incident, fear of recurrence, and reoccurring nightmares not severe); *Adams v. Sussman & Hertzberg, Ltd.*, 684 N.E.2d 935, 951 (Ill. App. Ct. 1997) (finding general fear, concern over career, fear for reputation, and sadness not severe). "Lesser emotions will not suffice." *Ponticiello v. Aramark Unif. & Career Apparel Servs.*, No. 05 C 1137, 2006 U.S. Dist. LEXIS 66977, at *37 (N.D. Ill. Sept. 19, 2006). Yet, these lesser emotions are all that are shown from the undisputed material facts in this case.

In his counter-claims, Xu alleges that Sun's interview with *CBS This Morning*, Zhao's statements to *Sixth Tone*, and Wang's social media posts, all occurring between March 10, 2018, and September 16, 2019,[4] caused him stress "so great that it manifested itself in physical symptoms, in that he has suffered from anxiety attacks, and he has developed a heart condition that required invasive treatment." (ECF No. 21, Count I at ¶ 4, Count III at ¶ 4, Count IV at 9.) On May 6, 2020, this Court was correctly skeptical of the inconsistency of Xu's claim, but "at [that] stage of the litigation," was compelled to accept the claim as true, "even if that amounts to construing the allegation as an exacerbation of his pre-existing heart condition." (ECF No. 35 at 10-11.)

Since filing his counter-claims, Xu has reported that his damages "consist of . . . severe emotional distress, discomfort and pain . . . [and] include the loss of reputation and the effect on Mr. Xu's professional standing in the art community, lost business and job opportunities and medical bills." (Exh. K.) He has identified Dr. Andrea Brasch, Dr. Scott Cinnamon, and Dr. Sami Zabanah as medical providers with knowledge of his emotional distress, none of whom specializes in psychological conditions. (Exh. J.) Xu has produced no medical records

---

[4] As mentioned above, to the extent that Xu relies on the April 24, 2014, text message alleged in his counter-claim as a cause of emotional distress, the claim is untimely and must be dismissed as a matter of law. *See* 735 ILCS 5/13-202 (two-year statute of limitations for personal injury claims).

showing he has been treated by any of these providers for emotional or psychological trauma, exacerbation of a pre-existing heart condition, or any invasive heart procedure on or after March 11, 2018, the date of the first event Xu claims to have caused him severe emotional distress.

Under oath, Xu explained the extent of his emotional distress:

Q:[5]    Mr. Xu, in addition to the damages that you answered for attorney's fees and medical expenses, are you also claiming the damages you've alleged in your counterclaims?

A:      Yes.

Q:      And those include severe emotional distress, compensation for that; is that correct?

A:      Absolutely, sir.

Q:      Anxiety attacks; is that correct?

A:      Yes.

Q:      Lost income?

A:      Yes.

Q:      Loss of reputation and good name?

A:      Yes.

(Exh. A at 328.)

In response to further questioning by Plaintiffs' counsel, Xu testified:

Q:[6]    What anxiety attacks have you had, and when?

A:      I would have nightmares, waking up in the middle of the night sweating.  In general, I'm - - I'm - - I exercise regularly.  I should not have had health issues. But I've been often out sick.

(Exh. A at 329.)

---

[5] Xu was questioned by his attorney, Mr. James Martinkus.
[6] Questioning by Plaintiffs' counsel, Jonathan Little.

The record demonstrates that there is no genuine dispute of material fact whether Xu suffered the severe emotional distress needed to prove his claims for intentional infliction of emotional distress.  His heart condition, and the invasive procedure he underwent to treat it, occurred four years before the acts he alleges caused it.  (Exh. A at 312.)  Since March 2018, Xu has sought no treatment from any medical or psychological professional for symptoms attributable to the public statements made by the Plaintiffs about him.  *See Young v. County of Cook*, No. 98 C 2215, 1999 U.S. Dist. LEXIS 19041, 1999 WL 1129108, at *21-22 (N.D. Ill. Dec. 7, 1999) (dismissing IIED claim when plaintiff did not immediately seek medical treatment and, when she did, complained only of sleeplessness and headaches); *Cheatham v. City of Chicago*, No. 16 C 3015, 2018 U.S. Dist. LEXIS 76440, 2018 WL 2096373, at *19-20 (N.D. Ill. May 7, 2018) (a "reasonable person" suffering severe emotional distress would seek medical treatment or consult a counselor).  His claims of anxiety, nightmares, night sweats, and loss of reputation, taken in a light most favorable to him, are insufficient as a matter of law to support his claims of intentional infliction of emotional distress.  *See Farrar v. Bracamondes*, 332 F. Supp. 2d 1126, 1131 (N.D. Ill. 2004) ("Stress, nervousness, anxiety, and sleeplessness that do not require any medical treatment are not severe emotional distress."). Counts I, III, and IV of Xu's counter-claim should be dismissed as a matter of law.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant Plaintiffs' Motion for Summary Judgment.


Dated:  June 1, 2022

/s/ *Jessica Wegg*
Jessica Wegg, ARDC #6301876
Jonathan Little ARDC # 6314350
Annemarie Alonso
Saeed & Little, LLP
133 West Market Street, No. 189
Indianapolis, Indiana 46204
Telephone: (317) 721-9214
jessica@sllawfirm.com
jon@sllawfirm.com
annie@sllawfirm.com

Dr. Ann Olivarius
Dr. J. F.O. McAllister
Lee D. Trevis
McALLISTER OLIVARIUS
641 Lexington Avenue, 13th Floor
New York, New York 10022
Telephone: (212) 433-3456
aolivarius@mcolaw.com
jmcallister@mcolaw.com
ltrevis@mcolaw.com

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I, Jessica Wegg, do hereby state on oath that I electronically filed the foregoing with

the Clerk of the Court using the CM/ECF system which will send notification of such filing

to all parties who have appeared and are registered as CM/ECF participants in this matter.

*/s/ Jessica Wegg*
Jessica Wegg