# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
### Urbana Division

| | |
|---|---|
| XINGJIAN SUN, et al., | |
| **Plaintiffs,** | |
| v. | Case No. 19-2242 |
| GARY GANG XU, | |
| **Defendant.** | |

## ORDER

This case is before the Court on post-trial motions filed by Plaintiffs/Counter-Defendants, Xingjian Sun, Xing Zhao, and AO Wang (collectively "Plaintiffs"). Plaintiffs' Motion (#147) asks the Court to enter judgment as a matter of law pursuant to Fed. R. Civ. P. 50(b) or, alternatively, for a new trial and/or remittitur pursuant to Fed. R. Civ. P. 59. Defendant/Counter-Plaintiff Gary Gang Xu ("Defendant") filed a response (#152) in opposition.

## I.   Background

Plaintiff Xingjian Sun ("Sun") was a student at the University of Illinois at Urbana-Champaign ("UIUC") and alleged that her professor, Defendant Gary Gang Xu, violated federal and Illinois state law when they engaged in a sexual relationship, which she alleged to be nonconsensual. Plaintiff Zhao was also a student at UIUC and alleged that Defendant violated federal and Illinois state law when he acted as her advisor. Plaintiff Wang has no affiliation with UIUC, but became involved with the matter when he made social media posts about Xu's alleged behavior. Plaintiffs filed their Complaint on September 9, 2019. On January 21, 2020, Defendant filed his Answer, which included Counterclaims against all three Plaintiffs.

On November 21, 2022, the Court entered an Order ruling on the parties' cross motions for summary judgment (#102). The Court dismissed Plaintiffs' Counts II

(Plaintiff Zhao's claim of forced labor), IV (Plaintiff Sun and Zhao's claim of trafficking into servitude), VII (Plaintiff Zhao's claim of involuntary servitude under Illinois law), VIII (Plaintiff Zhao's claim of trafficking in persons under Illinois law) and IX (Plaintiff Wang's claim of intentional infliction of emotional distress). The Court also dismissed Defendant's Count III, intentional infliction of emotional distress as to Wang.

The remaining counts proceeded to trial. On January 12, 2023, the jury returned a verdict in favor of Defendant on all of Plaintiffs' claims and in favor of Defendant on his claim of intentional infliction of emotional distress against Defendants Sun and Wang and his claim of defamation against Sun.  The jury assessed $100,000 in compensatory damages against Plaintiff Sun and $400,000 in compensatory damages against Plaintiff Wang. The jury further assessed $300,000 in punitive damages against Plaintiff Wang.

After the Court granted an extension of time, Plaintiffs filed their Rule 50(b) and 59 Motion on March 2, 2023.

## II.    Legal Standard

Federal Rule of Civil Procedure 50 provides that:

If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may:

(A) resolve the issue against the party; and

(B) grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.

If the court does not grant the motion for judgment as a matter of law at trial, Rule 50(b) further provides that:

No later than 28 days after the entry of judgment—or if the motion addresses a jury issue not decided by a verdict, no later than 28 days after the jury was discharged—the movant may file a renewed motion for judgment as a matter of law and may include an alternative or joint request for a new trial under Rule 59.

Fed. R. Civ. P. 59 provides that "[t]he court may, on motion, grant a new trial on all or some of the issues—and to any party . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." Pursuant to Rule 59(e), a party may seek to alter or amend a judgment.

III.    **Analysis**

Plaintiffs' Motion seeks the following: (1) judgment as a matter of law on Defendant's intentional infliction of emotional distress claims, (2) a new trial because the jury's verdict was the product of passion and prejudice and against the clear weight of the evidence, and (3) an amendment of the damages awarded. The Court will consider each argument in turn.

a.   **Judgment as a Matter of Law**

Plaintiffs argue that they are entitled to judgment as a matter of law on Defendant's claim for intentional infliction of emotional distress against Plaintiff Wang because no reasonable jury could find that Wang's conduct was extreme and outrageous or that Defendant suffered severe emotional distress.

First, Plaintiffs argue that the evidence does not support a finding that Plaintiff Wang's posts were extreme and outrageous as required.

Defendant claimed that Plaintiff Wang committed intentional infliction of emotional distress when Wang made a series of posts online claiming Xu had sexually harassed people and assaulted female colleagues for the past two decades. The post was titled, "U.S. professor sexually assaulting his students for more than 20 years." The post further claimed that Xu had worked at a different university where he was forced to resign.

Plaintiffs argue that Defendant's intentional infliction of emotional distress claim against Wang fails as a matter of law as the online posts were not extreme and outrageous behavior.

As the Court noted in its order ruling on the motions for summary judgment, Xu's claim for intentional infliction of emotional distress required proof of three elements. First, Xu must have shown that the plaintiff engaged in "truly extreme and

outrageous" conduct toward him. Second, he must show that the plaintiff either intended or recklessly disregarded the probability that the conduct would cause him to suffer emotional distress. Finally, Xu must produce evidence to show that the plaintiff's conduct actually and proximately caused him severe emotional distress. *Pub. Fin. Corp. v. Davis*, 360 N.E.2d 765, 767 (Ill. 1976); *McGrath v. Fahey*, 533 N.E.2d 806, 809 (Ill. 1988).

The Court considered this issue when ruling on the parties' opposing motions for summary judgment. The Court then concluded that a factual dispute remained for the jury over whether Wang's online posts constituted extreme and outrageous conduct. At trial, the jury found in favor of Defendant Xu, finding that Wang caused intentional infliction of emotional distress to Xu.

Plaintiffs argue that it was the court's role, not the jury's, to decide if Wang's online posts were extreme and outrageous conduct. In its Order denying Plaintiffs' motion for summary judgment on this issue, the Court considered *Dawson v. New York Life Ins. Co.*, 932 F.Supp. 1509, 156 (N.D. Ill. 1996). In *Dawson*, the court denied summary judgment on an intentional infliction of emotional distress claim when the plaintiff made alleged defamatory statements about illegal acts by Defendant at a large meeting viewed by thousands. The Northern District of Illinois noted that if the plaintiff convinced the jury that the defendant's statements were defamatory, a reasonable juror could find the defendant's statements to be extreme and outrageous.

Plaintiffs here argue that in *Dawson*, the court found that the statements the defendant made could amount to intentional infliction of emotional distress only because the plaintiff also alleged that those statements were defamatory. According to Plaintiffs, this difference is crucial, as a claim for defamation can be based on a negligent act, while an act must be intentional to amount to intentional infliction of emotional distress.

The Court agrees with Plaintiffs that an actor must either intend that his conduct inflict severe emotional distress or know there is a high probability that his conduct will cause severe emotional distress in a claim for intentional infliction of emotional distress. *McGrath v. Fahey*, 533 N.E.2d 806, 809 (Ill. 1988). However, the Court in *Dawson* did not

find that a successful defamation claim was required to maintain a claim for intentional infliction of emotional distress. Rather, the Court in *Dawson* merely found that the allegedly defamatory statements that were published to more than 700 employees during a meeting (and more by video) was sufficient to allow the jury to determine whether the statements amounted to extreme and outrageous conduct.

Similarly, the Court in this case found that a reasonable juror could find that Wang's comments, posted broadly on the Internet on several social media pages, were intended to cause severe emotional distress or that Wang knew there was a high probability that his conduct would cause Defendant severe emotional distress.

Plaintiffs focus on the fact that Wang believed the statements in his online posts to be true at the time he posted them. The jury heard this testimony at trial. They still found that the comments were extreme and outrageous. The jury reasonably relied on the other testimony they heard, including Defendant's testimony that Plaintiff Wang did not know Defendant at all when he chose to make the online posts and did little to confirm the information contained in his comments before posting. The jury had a reasonable basis for concluding that Wang's statements amounted to extreme and outrageous conduct.

Second, Plaintiffs argue that they are entitled to judgment as a matter of law on the intentional infliction of emotional distress claim because the evidence did not show that Defendant suffered severe emotional distress. In its Order on the Motion to Reconsider Ruling on Motion for Summary Judgment (#113), the Court considered this same argument and found:

> To satisfy this third element of the cause of action, a plaintiff must include facts to establish that the severity of the emotional distress was so great that "no reasonable man could be expected to endure it." *Feltmeier v. Feltmeier*, 798 N.E. 2d 75, 84 (Ill. 2003). "Emotional distress includes all highly unpleasant mental reactions, such as fright, horror, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment, worry, and nausea." *Bianchi v. McQueen*, 58 N.E.3d 680, 701 (Ill. App 2d 2016). "Severe emotional distress must be proved; but in many cases the extreme and outrageous character of the defendant's conduct is in itself important

evidence that the distress has existed." *Kolegas v. Heftel Broadcasting Corp.*, 607 N.E.2d 201, 213 (Ill. 1992).

> The Court finds that under the facts presented, whether or not Xu suffered severe emotional distress is a question of fact for the jury. At his deposition, Xu testified that he experienced anxiety attacks, lost income, and loss of reputation and good name. #96, Xu Dep. at p. 328. Plaintiffs' Motion argues that their actions could not have caused Xu to develop a heart condition requiring invasive treatment because the heart condition and surgery occurred before Plaintiffs' alleged conduct. This may be true, and Plaintiffs may object to this testimony at trial. However, Xu's testimony regarding the mental and emotional distress he experienced is sufficient to make it a factual dispute for the jury to resolve.

Order, #113 at p. 2-3.

At trial, Defendant Xu testified as he did in his deposition: including the anxiety attacks, lost income, and loss of reputation and good name. Plaintiffs had the opportunity to question the severity of these damages at trial and did so. Plaintiff cross examined Defendant Xu about the timing of his treatment for his heart condition and the amount of lost income. The jury heard all this testimony and found that Defendant experienced severe emotional distress. Plaintiffs have not shown that conclusion was unreasonable.

For these reasons, the Court finds that Plaintiffs are not entitled to judgment as a matter of law on Defendant's claim of intentional infliction of emotional distress against Plaintiff Wang.

### b.  New Trial

Next, Plaintiffs argue that they are entitled to a new trial because the jury's verdict was the product of passion and prejudice and against the clear weight of the evidence.

### i.  Evidence of Sun's Sexual Relationship

Plaintiffs first argue that the Court erred in admitting evidence of Plaintiff Sun's sexual relationship with another individual. Plaintiffs argue that defense counsel violated Federal Rule of Evidence 412 when he informed the jury that Plaintiff Sun engaged in a "sexual relationship with another professor."

During cross-examination of Plaintiffs' expert witness, Dr. Lynn Ponton, defense counsel asked, "Were you ever told by Ms. Sun in your interviews that from 2016 to 2018 she was having a sexual affair with another professor at the ---." (Trial Transcript, #141, p. 456.) Plaintiffs' counsel immediately objected, and the Court dismissed the jury for a break. While the jury was dismissed, defense counsel indicated that he intended to ask Dr. Ponton if she considered Plaintiff Sun's relationship with a former professor when forming her opinion and if that relationship impacted her opinion. (Trial Transcript, #141, p. 457-58.) The Court proceeded to discuss Federal Rule of Evidence 412, which provides:

> The following evidence is not admissible in a civil or criminal proceeding involving alleged sexual misconduct:
>
> > (1) evidence offered to prove that a victim engaged in other sexual behavior; or
> >
> > (2) evidence offered to prove a victim's sexual predisposition.

Fed. R. Evid. 412(a).

Rule 412 goes on to provide two exceptions to the general prohibition. The first exception pertains to criminal cases and did not apply in this case. The second exception provides:

> (2) Civil Cases. In a civil case, the court may admit evidence offered to prove a victim's sexual behavior or sexual predisposition if its probative value substantially outweighs the danger of harm to any victim and of unfair prejudice to any party. The court may admit evidence of a victim's reputation only if the victim has placed it in controversy.

Fed. R. Evid. 412(b).

The Court balanced Rule 412 with Defendant's right to question Dr. Ponton's opinion as to the cause of Plaintiff Sun's emotional injuries and permitted defense counsel to ask Dr. Ponton very limited questions. The following exchange occurred between defense lawyer Mr. Martinkus and Plaintiff's expert, Dr. Ponton:

BY MR. MARTINKUS:

Q. Dr. Ponton, you referenced in your supplemental report dated 9/26/22 that you reviewed Ms. Sun's records from Bellevue Hospital composed by Hannah Mittenberg, a social worker who was seeing Ms. Sun at that point in time, correct?

A. Correct

Q. And then you further state in your report:
"Following Professor Xu, Ms. Sun engaged in a relationship with [a former] professor who was even older than Professor Xu, but Ms. Sun described a very different relationship with him to [you]."

Is that what you put in you report?

A.  That's what I put in my report.

Q. All right, so –

A. That's correct.

Q. My question, then, is: What weight, if any, did you give to that disclosure in arriving at your opinions and conclusions with respect to Ms. Sun's problems today?

A. Well, I, I looked at it myself. It's not uncommon that after an individual has been, let's say, in an abusive relationship with a professor, as Ms. Sun describes, that they would seek out another relationship with another professor and try to redo it and to really restore -- or to recover from the abuse that they'd suffered.

One of the types -- the type of post-traumatic stress that she has, being serious, really means that she's pulled to reengage in relationships, trying to redo them or recover from them. That's why therapy is so important.

I brought this up in my addendum report because I had read the records of the treating woman therapist in New York, Hannah Mittenberg. She also felt this and described a relationship that Ms. Sun had had with a former professor where she had tried to recover. He was caring and kind to her and really helpful to her.

That's the relationship that I'm talking about in this particular paragraph, and I brought it up specifically to talk about the New York records because Ms. Sun had been trying to get therapy to really understand, --

THE COURT: I'm going to interrupt you, Ms. –

A. -- you know, all of the abuse

THE COURT: -- Ms. Ponton.

Mr. Martinkus, your next question.

MR. MARTINKUS: Thank you.

Trial Transcript, #141, p. 483-85.

Defense counsel concluded his questioning and then Plaintiff's counsel, Mr. Little, followed-up on redirect.

BY MR. LITTLE:
Q. Now, in your report that we were just going over, I want to direct you to that same paragraph. About halfway down, you write: This former professor of Ms. Sun's -- former professor -- "was very caring toward her and no abuse occurred."

Do you see that?

A. Yes.

Q. Okay. And would you mind reading the, the rest of that paragraph that Mr. Martinkus started there, starting with "was very caring toward her and no abuse occurred"?

A. Yes.

So, my next line is: "After all the therapy that Ms. Sun has had" -- remember, I mentioned she's had the ten different treaters -- "she now understands that she was trying to redo the relationship that she had with Professor Xu and find a man who would treat her in a kind and caring manner. This is the exact opposite of what she felt with Professor Xu who abused her."

Q. Okay. And you mentioned you reviewed a therapist, Hannah Mittenberg's records from New York. Is that accurate?

A. That's correct.

Q. And in reviewing those records, did you see any evidence or allegations that this relationship with a former professor was abusive or there were any rapes or anything like that?

A. No. No evidence of violence. And the fact that he was her former professor and not her current professor in a position of power over her with her career and grades meant a great deal. It gives more autonomy to the student.

Trial Transcript, # 141, p. 486-87.

Plaintiffs argue the Court improperly allowed this line of questioning and that the resulting jury verdict was the product of passion and prejudice.

Under Rule 412, "Evidence offered to prove that a victim engaged in other sexual behavior is generally inadmissible in proceedings involving allegations of sexual misconduct." *United States v. Young*, 955 F.3d 608, 614 (7th Cir. 2020) (citing Fed. R. Evid. 412(a)(1). However, as noted above, an exception exists in civil cases, where "evidence offered to prove the sexual behavior or sexual predisposition of any alleged victim is admissible if it is otherwise admissible under these rules and its probative value substantially outweighs the danger of harm to any victim and of unfair prejudice to any party. Evidence of an alleged victim's reputation is admissible only if it has been placed in controversy by the alleged victim." Fed. R. Evid. 412.

The Advisory Committee Notes to the 1994 amendment to Rule 412 explain that: "The rule aims to safeguard the alleged victim against the invasion of privacy, potential embarrassment and sexual stereotyping that is associated with public disclosure of intimate sexual details and the infusion of sexual innuendo into the factfinding process." "This standard reverses the burden usually applied under Rule 403 and imposes a more stringent standard by requiring that probative value 'substantially'

outweigh danger of harm to the victim or unfair prejudice to another party." *Blackmon v. Buckner*, 932 F.Supp. 1126, 1127 (S.D. Ind. 1996).

Furthermore, "In civil cases like this one, the rule by no means prohibits evidence of the alleged victim's sexual conduct or sexual predisposition, for such evidence may be highly relevant in many civil cases. Instead, the rule requires courts to consider precisely the potential relevance of such evidence and to prevent its use for purposes of exploiting stereotypes or subjecting a party or witness to gratuitous embarrassment and invasion of privacy." *Blackmon*, 932 F.Supp. at 1127.

During the trial, the Court conducted a precise balancing test under Rule 412 and concluded that the probative value of Defendant's questioning substantially outweighed the danger of harm to the victim and any unfair prejudice to Plaintiffs. Plaintiff Sun sought damages for physical and emotional harm, including ongoing post-traumatic stress disorder. At trial, Dr. Ponton testified that Sun suffered from "post-traumatic stress disorder of a severe degree."   Trial Transcript, #141, p. 430-31. Dr. Ponton further explained: "it means that she has constant intrusive thoughts every week. She lives in fear, really, of the professor coming back and interfering with her family even though, you know, she is obviously in a different place, a different country. And she has many, many physical symptoms that are related to this." Trial Transcript, #141, p. 431.

The defense sought to question Dr. Ponton on an alternative cause of Sun's emotional injuries. Specifically, defense counsel wanted to explore whether Dr. Ponton was aware of Sun's relationship with another former professor and whether Dr. Ponton considered the possible impact of that relationship on Sun's emotional state.

While Sun's relationship with her former professor normally is barred under Rule 412(a), this is a case where the probative value of that evidence vastly outweighed the risk of harm or prejudice to Sun. Dr. Ponton testified that Sun's severe post-traumatic stress symptoms directly resulted from her interactions with Defendant from a position of authority. The only evidence Defendant had to counter that conclusion was to ask about alternative causes of Sun's emotional damages and how those

alternative causes may have contributed to her symptoms. Several factors increased the probative nature of the evidence of Sun's relationship with her former professor. First, Sun's relationship with the other professor occurred after Sun's relationship with Defendant, but prior to Dr. Ponton's review of Sun's history. Second, both relationships involved professors who were older than Sun and in a position of power. Third, Sun's relationship with her former professor lasted for two years, which is a substantial time during which Sun's emotional health could have been impacted.

Furthermore, the Court had defense counsel narrowly tailor his questions to limit the any risk of prejudice to Plaintiffs.[1] For example, the Court barred any discussion of Sun's sexual behavior or interactions with her former professor. The Court further required defense counsel to specify that the other relationship involved a former professor, rather than a professor with whom she was taking classes. This was to limit any prejudice to Sun if the jury were to think that Sun was involved with another professor while in his class.[2]

While discussing this issue at trial, the Court cited *U.S. v. Zephier*, 989 F.3d 629 (8th Cir. 2021). In *Zephier*, the Eighth Circuit considered whether a defendant's constitutional rights were violated when the trial court barred the defendant from presenting evidence of a prior sexual assault. The defendant sought to introduce evidence of the prior assault to show that the difficulties the victim experienced were the result of a prior assault. *Id*. at 636. The trial court banned any evidence of the prior sexual assault under Rule 412. On appeal, the Eighth Circuit found that ruling "cut off [the defendant's] ability to present an alternative explanation for [the victim's] drug use and other difficulties." *Id*. The Court further explained that by banning this evidence,

---

[1] The Court offered Plaintiffs the opportunity to propose a limiting instruction to counter any harm by defense counsel using the word "affair" in his original question to Dr. Ponton, but Plaintiffs chose not to propose a limiting instruction. (Trial transcript, #141, p. 477.) As the Court noted, a limiting instruction would likely only serve to amplify the evidence in this case.

[2] The Court allowed defense counsel to note that Sun's later partner was a professor as it was relevant to whether any of Sun's emotional damages resulted from this second relationship, which the jury might find also had an imbalance of power.

12

"the jury could 'have been led ... to the conclusion' that [the victim's] difficulties were caused by [the defendant's] alleged criminal conduct, and his alone." *Id*. at 637.

The present case is civil in nature and Defendant is not entitled to the same constitutional protections as a criminal defendant. However, Defendant must be given the chance to defend his case and present evidence of an alternative cause through cross examination. *See Cooper v. Carl A. Nelson & Co.*, 211 F.3d 1008, 1021 (7th Cir. 2000) (noting that an alternative cause of the harm is "quite susceptible to exploration on cross-examination by opposing counsel" and that the "the accuracy and truthfulness of the underlying medical history is subject to meaningful exploration on cross-examination and ultimately to jury evaluation.").

In the end, as Plaintiffs' counsel recognized at the Final Pretrial Conference, the defense was permitted to ask Dr. Ponton if Sun's relationship with the other professor had any impact on Ponton's opinion on damages. (Trial Transcript, #141, p. 463.) Defendant was permitted to present evidence of an alternative cause of Plaintiff Sun's damages, and a new trial is not warranted.

### ii.  Damages

Plaintiffs also seek a new trial by arguing that the compensatory damages award against Plaintiff Wang was excessive, not rationally supported by the evidence, and the result of passion and prejudice. Plaintiffs acknowledge that it "is unknown how the jury allocated Defendant's damages" and that the jury was instructed to only consider "the physical and mental/emotional pain and suffering" that Defendant suffered "and no others." Trial Transcript, #142, p. 727. However, Plaintiffs argue that it "is highly likely the jury was unduly influenced by Defendant's uncorroborated pleas of poverty and his counsel's assurance in closing that Defendant's damages began with the loss of a $150,000 per year job, for which he provided no documentary evidence or corroboration." Plaintiffs provide no evidence of this beyond their own speculation.

In Illinois, "The determination of damages is a question reserved to the trier of fact, and a reviewing court will not lightly substitute its opinion for the judgment

rendered in the trial court."[3] *Richardson v. Chapman*, 175 Ill. 2d 98, 113 (Ill. 1997). "An award of damages will be deemed excessive if it falls outside the range of fair and reasonable compensation or results from passion or prejudice, or if it is so large that it shocks the judicial conscience." *Id*.

The jury's award of $400,000 in compensatory damages was not so large that it shocks the judicial conscience. "[I]t was the jury's function to consider the credibility of the witnesses and to determine an appropriate award of damages." *Id*. The jury heard evidence of the consequences of Plaintiff's Wang's online comments on Defendant's personal and professional life. They were properly instructed on what categories of damages they were to consider. The compensatory damages award was not the product of passion or prejudice, but rather of the jury's evaluation of the witnesses' credibility and the evidence presented.[4]

### iii. Jury Instructions on Severe Emotional Distress

Finally, Plaintiffs argue that they are entitled to a new trial because the Court erred in failing to instruct the jury on the legal standards by which severe emotional distress must be measured. When considering a motion for new trial based on an improper instruction, "we ask whether the instructions, when considered in their entirety and not in isolation, were sufficient to inform the jury of the applicable law." *Spiller v. Brady*, 169 F.3d 1064, 1066 (7th Cir. 1999).[5]

Plaintiffs argue that the Court erred by failing to define "severe emotional distress" in its instruction on the elements of intentional infliction of emotional distress.

Plaintiff proposed a jury instruction detailing the elements of intentional infliction of emotional distress, which included the following definition:

---

[3] Illinois law applies because the jury's verdict against Plaintiff Wang was based solely on Illinois state law claims.
[4] Plaintiffs also ask the Court to grant a new trial because the punitive damages award against Plaintiff Wang was excessive. The Court will consider this argument below when discussing Plaintiffs' Rule 50 motion.
[5] "Illinois law controls the propriety of the challenged jury instruction, because federal courts exercising pendent or diversity jurisdiction must apply state law to matters of substantive law, including the substance of jury instructions." *Littlefield v. McGuffey*, 954 F.2d 1337, 1344 (7th Cir. 1992).

> "Severe emotional distress" includes instances where the distress inflicted is so severe that no reasonable person could be expected to endure it. The intensity and the duration of the distress, as well as whether one sought medical treatment for the distress, are all factors to consider in determining its severity.

Plaintiffs' Proposed Jury Instructions, #100, p. 30

Plaintiffs objected to Defendant's proposed instruction, which did not provide a definition of severe emotional distress.[6] Plaintiffs' Objection to Defendant's Proposed Jury Instructions, #112, at 7. Plaintiffs reiterated their objection at trial. Trial Transcript, #141, at 583, 664.

The Court instructed the jury on the intentional infliction of emotional distress claims as follows:

> In Xu's Counterclaim III, Counter-Plaintiff Gary Xu claims that Counter-Defendant Ao Wang intentionally inflicted emotional distress upon him.  To succeed on this claim, Xu has the burden of proving each of the following propositions:
>
> > First, that Ao Wang acted in one of the ways claimed by Gary Xu as stated to you in these instructions;
> >
> > Second, that Wang's conduct was extreme and outrageous. Whether conduct is extreme and outrageous depends on all the facts and circumstances. It must be so extreme in degree and outrageous in character that no reasonable person should be expected to endure it in a civilized community;
> >
> > Third, that Wang intended that his conduct inflict serious emotional distress or deliberately disregarded a high probability that emotional distress would follow from his conduct;
> >
> > Fourth, that Xu experienced severe emotional distress;
> >
> > Fifth, that Wang's conduct proximately caused Xu's emotional distress; and
> >
> > Sixth, Xu was damaged.

---

[6] The parties also disputed whether to define the terms "extreme and outrageous." The Court included these definitions in its jury instructions.

If you find from your consideration of all the evidence that any one of the propositions Xu is required to prove has not been proved, then your verdict shall be for Wang.

If, on the other hand, you find from your consideration of all the evidence that each of the propositions required of Xu has been proved then your verdict shall be for Xu.

Court's Final Jury Instructions, #129.

Plaintiffs argue the Court erred in failing to define the phrase "severe emotional distress." Plaintiffs do not argue that the instruction given misstated the law, but instead argue that the instruction failed to give the jury the proper standard by which to measure the level of emotional distress suffered.

"The standard for determining the adequacy of jury instructions is whether they were sufficiently clear to avoid misleading the jury, while at the same time, fairly and correctly stating the law." *Valentino v. Hilquist*, 785 N.E.2d 891, 904 (Ill App. 1st 2003).

There is no Illinois Pattern Instruction for claims of intentional infliction of emotional distress. "Whenever IPI does not contain an instruction on a subject on which the court determines that the jury should be instructed, the instruction given in that subject should be simple, brief, impartial, and free from argument." Illinois Sup. Ct. Rule 239(a).

Importantly, the jury instructions given here told the jury that the extreme and outrageous conduct "must be so extreme in degree and outrageous in character that no reasonable person should be expected to endure it in a civilized community." The Court reviewed other jury instructions given for the claim of intentional infliction of emotional distress in Illinois, and the courts used this same language to define extreme and outrageous conduct and severe emotional distress. For example, in *Fox v. Will County, et al.,* the Northern District of Illinois court instructed the jury, "Extreme and outrageous conduct means conduct that is so outrageous in character, and so extreme in degree as to go beyond all possible bounds of decency in a civilized community, and is such that the intensity and duration of the distress inflicted is so severe that no reasonable person of ordinary sensibilities could be expected to endure." 600 F.3d 819

16

(7th Cir. 2010), Jury Instructions, 2007 WL 4676116. This is almost identical to the language used here. *See also Julka et al, v. Butler Illinois School District #53, et al.*, #17-2849, #267, p. 11 (The Northern District of Illinois instructed the jury that to succeed on the claim for intentional infliction of emotional distress, the plaintiff must prove that "The defendant's conduct caused the plaintiff emotional distress so severe that no reasonable person could be expected to endure it.").

The Court finds that the instructions given adequately instructed the jury as to Illinois law on the claim of intentional infliction of emotional distress. In this context, the term "severe emotional distress" speaks for itself and required no further explanation.

### c.  Amended Judgment

Plaintiffs ask the Court to amend the judgment under Rule 59(e) because punitive damages are not available for a claim of intentional infliction of emotional distress. Fed. R. Evid. 59(e) states that "A motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment."

The jury awarded Defendant $300,000 in punitive damages on Defendant's counterclaim for intentional infliction of emotional distress. Plaintiffs maintain punitive damages are not available under state law.[7]

Defendant agrees with Plaintiffs that the Supreme Court of Illinois barred the award of punitive damages for intentional infliction of emotional distress claims. *Kniermin v. Izzo*, 174 N.E.2d 157 (1961) (holding that punitive damages cannot be sanctioned as an additional recovery in an intentional infliction of emotional distress case). While conceding this point, Defendant argues that the ruling in *Kniermin* should be reconsidered. As a federal district court, this Court will not weigh in on whether an Illinois Supreme Court ruling should be reconsidered and instead serves only to enforce

---

[7] Defendant's proposed verdict form included a line asking the jury if they assess punitive damages, and if yes, to fill in the amount. #119, p. 57. Plaintiff did not file an objection to the proposed verdict forms. The parties later filed joint proposed jury instructions which also included this line referencing punitive damages. #123, p. 57.  The Court adopted this language in its verdict forms, to which Plaintiff did not object at the formal jury instruction conference. #127.

that ruling. Pursuant to the holding in *Kniermin*, the Court amends the judgment by striking the $300,000.00 in punitive damages awarded to Counter-Plaintiff Xu against Counter-Defendant Wang.

Plaintiffs also ask the Court to vacate the judgment against Plaintiff Sun as improper double recovery. The jury awarded Defendant $50,000 in compensatory damages against Plaintiff Sun for intentional infliction of emotional distress. The jury also awarded Defendant $50,000 in compensatory damages against Plaintiff Sun for defamation. Plaintiffs argue that the jury erroneously awarded damages both for Defendant's defamation and intentional infliction of emotional distress.

Here, the Court instructed the jury as follows:

If you find for any of the Plaintiffs, or for the Counter-plaintiff, you may, but are not required to, assess compensatory damages against the Defendant or any of the Counter-defendants. You may award compensatory damages only for injuries that Plaintiffs or Counter-plaintiff have proved by a preponderance of the evidence were caused by Defendant or Counter-defendants' wrongful conduct.

Your award must be based on evidence and not speculation or guesswork. This does not mean, however, that compensatory damages are restricted to the actual loss of money; they include both the physical and mental aspects of injury, even if they are not easy to measure.

You should consider the following compensatory damages, and no others: The physical and mental/emotional pain and suffering that Plaintiffs or Counter-plaintiff have experienced and is reasonably certain to experience in the future. No evidence of the dollar value of physical or mental/emotional pain and suffering has been or needs to be introduced.

There is no exact standard for setting the damages to be awarded on account of pain and suffering. You are to determine an amount that will fairly compensate Plaintiffs or Counter-plaintiff for the injury he or she has sustained.

The Court also instructed the jury that it "must give separate consideration to each claim and each party."

The Court instructed the jury on the types of damages it could award and what evidence was required to find those damages. The verdict forms had the jury separate out the damages awarded for each finding. Plaintiffs have not shown evidence that the jury misunderstood these instructions or duplicated their award. Instead, the jury verdict makes clear that the jury intended to award Defendant $50,000 in compensatory damages for his defamation claim and $50,000 in compensatory damages for his intentional infliction of emotional distress claim. The Court denies Plaintiffs' request to amend the judgment against Plaintiff Sun.

IV.    **Conclusion**

For the reasons provided above, Plaintiffs' Motion for Judgment as a Matter of Law Pursuant to Fed. R. Civ. P. 50(b), or alternatively Motion for a New Trial and/or Remittitur pursuant to Fed. R. Civ. P. 59 (#147) is GRANTED in part and DENIED in part. The Court amends the judgment entered in the case by striking the $300,000.00 in punitive damages awarded to Counter-Plaintiff Xu against Counter-Defendant Wang. The Court directs the Clerk to enter an amended judgment. Plaintiffs' Motion is denied in all other respects.


ENTERED this 26th day of April, 2023.

                                    _____
                                    s/ERIC I. LONG
                                    UNITED STATES MAGISTRATE JUDGE

19